# UNITED STATES DISTRICT COURT

for the

Western District of Washington

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

Two SUBJECT PREMISES more further described in
Attachments A1 thru A2

)
)
)
)
)
)

Case No.     MJ21-646

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachments A1 thur A2, which are incorporated herein by reference

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, which are incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841 & 846 | Distribution of, and Possession with Intent to Distribute, Controlled Substances, and Conspiracy to do the same. |
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm. |

The application is based on these facts:

✓ See Affidavit of FBI Special Agent Shawna McCann.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or ☐ telephonically recorded.

_____
*Applicant's signature*

Shawna McCann, FBI Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:     _____12/09/2021_____

_____
*Judge's signature*

City and state:   Seattle, Washington

Paula L. McCandlis, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT OF SHAWNA MCCANN**

STATE OF WASHINGTON          )
                             )     ss
COUNTY OF KING               )

I, Shawna McCann, a Special Agent with the Federal Bureau of Investigation, Seattle, Washington, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.     This Affidavit is being submitted pursuant to Federal Rule of Criminal Procedure 41 in support of an Application for warrants authorizing the search of the following locations:

    a.     1040 S 320th Street, Apartment 11, Federal Way, Washington, an apartment unit associated with Jimmy Miller Jr. ("**Subject Premises 2**"), as further described in Attachment A1, which is incorporated herein by reference, to search for evidence, fruits and instrumentalities, as further described in Attachment B, which is incorporated herein by reference.

    b.     11300 1st Avenue NE, Apartment 220, Seattle, Washington, an apartment unit associated with Jimmy Miller Jr. ("**Subject Premises 3**"), as further described in Attachment A2, which is incorporated herein by reference, to search for evidence, fruits and instrumentalities, as further described in Attachment B, which is incorporated herein by reference.

2.     As described in greater detail below, there is probable cause to believe that Jimmy Miller Jr. is trafficking narcotics, is a prohibited person carrying firearms, and has used numerous apartment units and vehicles to facilitate his narcotics trafficking and unlawful firearms possession. Agents on physical surveillance have observed Jimmy Miller Jr. visiting and staying overnight at several different apartment units, including **Subject Premises 2** and **3** and driving different vehicles on a daily to weekly basis.

3.     Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that violations of Title 21, United States

AFFIDAVIT OF SHAWNA MCCANN - 1
USAO # 2021R01012

Code, Sections 841 (Distribution of Controlled Substances), and 846 (Conspiracy) and Title 18, United States Code, Section 922(g) (Felon in Possession of a Firearm), have been committed, are being committed, and will be committed by Jimmy Miller Jr. There is also probable cause to believe that **Subject Premises 2** and **3** described above contain evidence of the aforementioned offenses. As such, there is probable cause to search the location described in Attachments A1 and A2 for evidence of these crimes, as described in Attachment B. Obtaining the information sought in this Affidavit is necessary to further the investigation into these offenses.

## AGENT BACKGROUND

4.      I am employed as a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been employed with the FBI since September 2017. I am currently assigned to the Seattle Field Division where I am a member of the violent crime, gang, and Transnational Organized Crime – Western Hemisphere squad. In this capacity, I investigate, inter alia, violations of Title 18, United States Code, Section 922(g) et seq., and related offenses. I have received over 400 hours of classroom training including, but not limited to, gang investigations, drug identification, drug interdiction, money laundering techniques and schemes, smuggling, and the investigation of individuals and/or organizations involved in gang activity, firearms trafficking, and trafficking of controlled substances.

5.      In my role as a Special Agent for the FBI, I have participated in gang and narcotics investigations that have resulted in the arrest of individuals and the seizure of illicit narcotics and/or narcotics-related evidence, firearms, and the forfeiture of narcotics-related assets. I have been involved in the service of federal and state search warrants as part of these investigations. I am also familiar with the manner in which criminals, including gang members/associates and drug traffickers, use telephones, often cellular telephones, to conduct their unlawful operations, and how they code their conversations to disguise their unlawful activities.

AFFIDAVIT OF SHAWNA MCCANN - 2
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

6.      I have written affidavits in support of court-authorized federal warrants and orders in the Western District of Washington for GPS tracking of telephones, Pen Register/Trap and Trace, and search warrants. Additionally, I have testified in grand jury proceedings, written investigative reports, and conducted and participated in numerous interviews of drug traffickers of various roles within drug organizations, which has provided me with a greater understanding of the methods by which drug trafficking organizations operate.

7.      I am an investigative law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). As such, I am empowered to conduct investigations of, and to make arrests for, violations of the Controlled Substance Act, Title 21, United States Code, Section 801 et seq., and related offenses.

8.      The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement personnel; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the Application for the search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## STATEMENT OF PROBABLE CAUSE

### Background

9.      Jimmy Miller Jr., aka "Jimmy-Jam," has previously been convicted of crimes punishable by imprisonment for a term exceeding one year, to wit: *Possession of Crack Cocaine with Intent to Distribute,* and *Felon in Possession of a Firearm,* in the United States District Court for the Western District of Washington, Cause No. CR09-0087RAJ, on or about August 28, 2009; and *Violation of the Uniform Controlled*

AFFIDAVIT OF SHAWNA MCCANN - 3
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  *Substances Act; Delivery of Cocaine,* in King County Superior Court, Cause No. 03-1-

2  07253-9 SEA, on or about June 26, 2003. As a result of his federal conviction in 2009,

3  Miller was on federal supervised release in June 2013.

4       10.    On or about June 13, 2013, Miller was detained based on probable cause of

5  violations of his federal supervised release, including Felon in Possession of a Firearm.

6  On July 25, 2013, a federal Criminal Complaint was issued for Miller for one count of

7  Felon in Possession of a Firearm. On August 8, 2013, Miller was indicted on one count of

8  Felon in Possession of a Firearm. On May 15, 2014, Miller was convicted by a jury of

9  one count Felon in Possession of a Firearm. On September 19, 2014, Miller was

10  sentenced to 89 months in prison and three years of supervised release (*see* 13-CR-

11  00249-RAJ). Miller's three-year term of federal supervised release commenced on

12  November 25, 2020.

13       11.    In late summer 2021, agents spoke with a confidential source (CS1)[1] who

14  advised agents that CS1 saw Miller brandishing a firearm, that he was

15  trafficking/distributing cocaine, and that Miller was using phone number (206) 530-7878

16  (hereinafter Target Telephone or "TT"). Around the same time, agents spoke with

17  another confidential source (CS2)[2] who advised agents that Miller was carrying a firearm,

18  was assaulting and shooting at people, and was trafficking/distributing cocaine. CS2 also

19  provided TT as Miller's phone number.

20

21

---

22  [1] CS1 has provided credible and reliable information in the past on other investigations that led to charges and

23  seizures of narcotics and firearms. CS1 has multiple felony convictions involving crimes of violence. CS1 also has several gross misdemeanor or misdemeanor convictions, which include making false or misleading statements more than five years ago. CS1 has outstanding warrants for misdemeanor offenses and a felony, none of which involve

24  crimes of violence or crimes relating to dishonesty. CS1 is a paid informant with Seattle Police Department for over five years who has not been closed for cause by any other law enforcement agency. CS1's identity is not being

25  disclosed in this application to protect CS1's safety.

26  [2] CS2 has provided credible and reliable information in the past on other investigations. CS2 has multiple non-violent felony and gross misdemeanor convictions involving crimes of theft. CS2 also has several gross

27  misdemeanor or misdemeanor convictions, which include making false or misleading statements and attempted forgery more than five years ago. CS2 is a paid informant with Seattle Police Department. CS2's identity is not being disclosed in this application to protect CS2's safety.

AFFIDAVIT OF SHAWNA MCCANN - 4
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

12.     Agents located a Bellevue Police Department incident report, dated August 11, 2021, for theft of car parts in which Miller was listed as the victim, as the registered owner of the vehicle, with a contact phone number of TT.

13.     On September 2, 2021, Miller's federal probation officer provided information that Miller has used marijuana while on supervised release since early 2021 based on positive urinalysis tests and admissions from Miller, including on or about February 19, 2021, April 2, 2021, and April 11, 2021, for which the probation officer filed a Noncomplaince Report with the court (*see* 13-CR-00249-RAJ, Dkt. 137). The probation officer reported that Miller has become more defiant lately, through September 2, 2021.

14.     I have consulted with TFO Jon Huber, a Detective with the Seattle Police Department's Gang Unit, who has extensive knowledge and training on local gang members, associates, and activity in the Seattle area. TFO Huber is familiar with Miller from prior investigations and identified Miller as a member of the East Union Street Hustler gang.  In addition, it is my understanding that Miller has himself admitted his past membership in that gang to law enforcement, including to a U.S. Probation Officer some years ago, and that he has tattoos consistent with his membership in that gang.

15.     On September 7, 2021, the Honorable S. Kate Vaughan issued a search warrant for GPS location data with an integrated Pen Register and Trap and Trace order for TT.

16.     During the period of GPS location data on TT from September 7, 2021 to October 7, 2021, agents were able to use the GPS location data and Pen Register and Trap and Trace data to identify the residence of and other locations frequented by Miller. Agents also used GPS location data for TT to conduct physical surveillance on Miller and observed him in the same location as the GPS location data for TT at multiple different locations and times, thereby confirming that Miller is the user of TT. Finally, agents observed Miller engaged in activity indicative of drug trafficking coming and going from

AFFIDAVIT OF SHAWNA MCCANN - 5
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   his residence, 23811 132nd Avenue SE, Apt W8, Kent, Washington ("Subject Premises

2   1") as well as **Subject Premises 2** and **3**.

3       17.     For example, on October 6, 2021, agents observed that GPS location data

4   for TT placed Miller at a residence located in the Capitol Hill neighborhood of Seattle

5   ("Subject Premises 4") from around 11:57 p.m. on October 5, 2021 to around 8:12 a.m.

6   on October 6, 2021. GPS location data for TT showed that Miller then travelled to

7   **Subject Premises 3** from around 8:57 a.m. to 12:42 p.m. GPS location data for TT

8   showed that Miller then travelled to the Federal Way area for only a few minutes before

9   travelling back northbound to a third apartment complex in Renton where he stayed for

10  about an hour. Agents conducting physical surveillance observed Miller, identified based

11  on a comparison to his driver's license photograph, exit an apartment building at this

12  Renton apartment complex with a female, later identified as Racquael Grace based on a

13  comparison to her driver's license photograph. Grace's listed address on her driver's

14  license is **Subject Premises 3.** Miller and Grace got into a white Toyota Corolla bearing

15  Washington license plate BZZ3480 and drove off. Washington Department of Licensing

16  records showed that this vehicle was a rental vehicle. Agents followed Miller directly

17  back to his residence, Subject Premises 1, where agents observed Miller park the rental

18  vehicle in assigned, covered carport stall #31. Miller and Grace exited the vehicle

19  carrying several shopping bags and a backpack and go into the breezeway, up the stairs to

20  the second floor, and into Unit W8, the Subject Premises 1.[3]

21      18.     Based on my training and experience, I know that drug traffickers

22  frequently have associates, including girlfriends, who assist with their drug trafficking

23  operations by storing and distributing the drug product and by renting vehicles under

24  their names in order to evade law enforcement detection. I also know that drug traffickers

25  frequently have multiple stash and distribution locations for their drug product, including

26  the apartments or residences of their associates and girlfriends, which they visit before

27

---

[3] Subject Premises 1 is listed as Jimmy Miller Jr.'s residence on his Washington driver's license.

AFFIDAVIT OF SHAWNA MCCANN - 6
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

returning to their own residences. Based on my training and experience, I believe that, in conjunction with prior physical surveillance observations discussed below and confidential source information, that Miller's activities of visiting three different apartment complexes other than his own, including **Subject Premises 3,** for various periods of time and use of a rental vehicle to evade law enforcement detection is indicative of drug trafficking activity, specifically the storing, distributing, and collecting of narcotics proceeds and that **Subject Premises 3** likely contain Miller's narcotics and/or narcotics proceeds.

19.    On September 9, 2021, in the morning, GPS location data for TT placed Miller at Subject Premises 1. Agents arrived at the apartment complex and observed a black Toyota 4Runner bearing California license plate 8VLD146 parked in an unassigned, uncovered parking spot in front of the W building near unit W8. At approximately 11:33 a.m., GPS location data for TT placed the device at Uncle Ike's Pot Shop, 2310 E. Union Street in Seattle. Agents arrived at this marijuana dispensary and observed Miller standing in the parking lot talking to Terrence Goodwin near the parked black Toyota 4Runner bearing California license plate 8VLD146. Agents positively identified Miller and Terrence Goodwin based off their driver's license photographs, online/social media photographs, and from being familiar with both individuals from prior investigations. Washington Department of Licensing records showed that the black Toyota 4Runner was a rental car.

20.    At approximately 11:41 a.m., agents observed Miller get into the driver's seat of the black 4Runner. At approximately 11:44 a.m., agents observed Goodwin approach the driver's door of the black 4Runner, which was open, and lean in and talk to Miller for a few seconds; Goodwin then walked back toward the marijuana dispensary and Miller shut the driver's door. Less than a minute later, Goodwin came back to the driver's door of the 4Runner, which Miller opened again, and Goodwin stood in the open driver's door area talking to Miller and looking around. At this time, the agents' view

AFFIDAVIT OF SHAWNA MCCANN - 7
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

became obstructed by a passing vehicle and agents were unable to see if Miller and Goodwin made contact or engaged in any hand-to-hand transactions. At approximately 11:45 a.m., agents observed Goodwin walking away from the 4Runner; Miller shut the driver's door and drove out of the marijuana dispensary parking lot in the black Toyota 4Runner. Based on my training and experience, Miller's actions at the marijuana dispensary parking lot with Goodwin appeared to agents to be indicative of a drug deal/distribution.

21.    Per the Standard Conditions of Federal Supervision (*see* 13-CR-00249-RAJ, Dkt. 115), Miller "shall not associate with any person convicted of a felony" unless granted permission by his probation officer. Goodwin has seven state felony convictions for drug possession with intent to manufacture/deliver, unlawful possession of a firearm, assault, drug possession,[4] theft, robbery, and rape of a child. Additionally, Goodwin is known by agents to frequent high crime and drug trafficking areas, including South Jackson Street and 23rd Avenue South in Seattle. I have observed numerous drug deals occur in the parking lot at this intersection and am aware, through personal experience and the experience of other agents with whom I work, that this parking lot is a common drug trafficking area associated with gang activity. Notably, on April 11, 2021, Goodwin and two other people associated with the Union Street gang were shot in the parking lot of South Jackson Street and 23rd Avenue South in Seattle.

22.    On September 14, 2021, from around 8:45 a.m. to 11:00 a.m., GPS location data for TT placed Miller at another apartment complex in Bellevue, Washington. Agents arrived at that location and observed Miller accessing the passenger side of the same black Toyota 4Runner referred to above. At approximately 11:40 a.m., agents observed the 4Runner pull into the Chevron gas station in Bellevue, and Miller get out of the driver's side of the 4Runner and use the vacuums at the gas station to vacuum the car

---

[4] The Washington Supreme Court has recently held that Washington's state law prohibiting mere possession of controlled substances is unconstitutional.

AFFIDAVIT OF SHAWNA MCCANN - 8
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

while a female, later identified as Grace, went inside the gas station store. At this time, GPS location data for TT placed the device at this Chevron gas station. Agents observed Miller move the 4Runner to the gas pumps and fill the vehicle with gas and then depart. Agents then followed Miller as he drove the 4Runner to the SeaTac Airport rental car return with all the windows rolled down.

23.     At approximately 2:00 p.m., GPS location data for TT showed that Miller had left the car rental return location at the airport. At approximately 2:30 p.m., agents observed Miller arrive at Subject Premises 1 in the passenger seat of a 2004 grey Toyota Camry bearing Washington license plate 990XDN, registered to Shelley Houser at 2459 S 216th Street, Apt 224, Des Moines, Washington. Agents observed Miller get out of the passenger seat of the grey Toyota and use a key to check the mailboxes at his apartment complex. The grey Toyota then parked in front of Building W of the apartment complex. Agents observed Miller and Grace, exit the Toyota Camry; Miller grabbed a black backpack out of the backseat of the Camry and Grace grabbed some paperwork out of the Camry. Agents observed Miller and Grace go into Building W and enter the unit on the right side of Building W, on the second floor, which corresponds to Unit W8, Subject Premises 1. GPS location data for TT shortly thereafter placed the device at Subject Premises 1.

24.     Based on my training and experience and other information set forth herein, I believe that Miller vacuumed out the rental car and drove with all the window rolled down before returning the rental car in order to get rid of drug odor and residue to evade law enforcement detection. I know based on my training and experience that drug traffickers frequently use rental cars, instead of personal vehicles, to conduct their drug trafficking activities in order to evade law enforcement detection and to be able to change out vehicles on a regular basis.

25.     Later in the evening on September 14, 2021, GPS location data for TT showed Miller was at Judkins Park in Seattle. At approximately 6:30 p.m., the Pen

AFFIDAVIT OF SHAWNA MCCANN - 9
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Register and Trap and Trace on TT, showed that Miller was communicating with phone number (206) 854-0719. Based on law enforcement database checks, this phone number was associated with Dimitris Tinsley. At approximately 6:35 p.m., agents observed a new white Audi SUV pull up quickly to the park and a male identified by agents as Dimitris Tinsley, based on comparison to his driver's license photograph, near the Audi for a few seconds before Tinsley walked away carrying a black backpack. The Audi then drove off quickly using side roads, and Tinsley walked towards a vehicle with a license plate registered to Enterprise rental car.

26.     As set forth above, Miller is prohibited from associating with convicted felons per his federal supervised release conditions. Dimitris Tinsley has a prior federal felony conviction in 2010 in this Court for Conspiracy to Distribute Controlled Substances under CR08-255MJP and two local felony convictions for drug possession.[5] In addition, Tinsley, like Miller, admitted to being a member of the East Union Street Hustlers at the time of his arrest on his federal charges, and was a known associate of Miller's prior to Tinsley's arrest on those charges. *See, e.g.*, *U.S. v. Tinsley*, CR09-255MJP, Complaint at Dkt. 1, Page 4, ¶¶ 7, 8.

27.     In mid-October 2021, agents spoke with a confidential source (CS3)[6] who advised agents that Tinsley continues to be associated with gang members and gang activity and that Tinsley had recently emerged as a higher level narcotics trafficker.[7] CS3

---

[5] The Washington Supreme Court has recently held that Washington's state law prohibiting mere possession of controlled substances is unconstitutional.

[6] CS3 has been a confidential source with SPD since 2016. CS3 has been a confidential source for the FBI since August of 2018. CS3 became a confidential source after an arrest on drug charges. CS3 was not charged after working for law enforcement. CS3 has since worked as a paid informant. CS3 has provided reliable information in the past, including information that led to successful prosecutions of a number of individuals. CS3 has felony convictions, none of which involve crimes relating to dishonesty, but include violence-related crimes for possession of a firearms and attempted residential burglary, all more than eight years ago. CS3 also has gross misdemeanor or misdemeanor convictions involving crimes of dishonesty and violence for identity theft, false reporting, and assault, all more than eight years ago. The identity of CS3 is not being disclosed in this Application. I believe that doing so could place CS3's safety and security in jeopardy and compromise this and other ongoing investigations in which CS3 is involved and is being utilized.

[7] Agents believe that Tinsley may have increased his drug trafficking volume after federal agents conducted a separate investigation into a drug trafficking organization with gang ties and arrested over 15 individuals in April

AFFIDAVIT OF SHAWNA MCCANN - 10
USAO # 2021R01012

1  reported that Tinsley had a recording label and clothing label but that both were not

2  successful businesses, and that Tinsley was living a lifestyle incommensurate with any

3  legitimate income, including recently purchasing a new home and two Rolex watches.

4      28.    Accordingly, agents believe Miller is in violation of his federal supervised

5  release conditions and is engaged in criminal activity, including narcotics trafficking

6  activities.

7  **Specific Probable Cause as To Subject Premises 2 and 3**

8      29.    On October 20, 2021, the Honorable Michelle L. Peterson issued a search

9  warrant for renewed GPS location data with an integrated Pen Register and Trap and

10 Trace order for TT.

11     30.    On October 29, 2021, the Honorable Brian A. Tsuchida, issued a search

12 warrant authorizing law enforcement and a trained narcotics canine to conduct a sniff in

13 the stairwell, breezeway, and exterior front door/porch area of Subject Premises 1.

14     31.    On November 3, 2021, agents conducted physical surveillance on Subject

15 Premises 1. Based on GPS location for TT, Miller had left Subject Premises 1 around

16 4:00 p.m. on November 3, 2021 and travelled to **Subject Premises 3** from approximately

17 4:30 p.m. to 6:45 p.m.  Between approximately 7:45 p.m. and 8:30 p.m., GPS location

18 data for TT showed that Miller was in the vicinity of the BluWater Bistro –Leschi in

19 Seattle.

20     32.    At approximately 8:10 p.m., agents conducted physical surveillance while a

21 trained narcotics-detection handler and canine conducted a sniff in the stairwell and

22 breezeway leading to Subject Premises 1.  The training and qualifications of the trained

23 handler and his canine "Devon" are attached hereto as Attachment C and incorporated by

24 this reference.  After searching the open stairwell and breezeway, K9 Devon indicated to

25 the presence of narcotics odor towards the area of Subject Premises 1. Devon then

26

27 2021, creating the opportunity for other gang-related individuals, like Tinsley, to fill the drug trafficking void in the gang territories of Seattle.

AFFIDAVIT OF SHAWNA MCCANN - 11
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   conducted a sniff of the front door of Subject Premises 1, including near the lower seam
2   of the door and door handle, and provided a trained alert to the presence of narcotics odor
3   coming from Subject Premises 1.[8]

4   33.   Later that same night, at approximately 9:15 p.m., GPS location data for TT
5   showed that Miller then drove to an apartment complex in the Tacoma area before
6   driving towards Subject Premises 1 at approximately 10:00 p.m. At approximately 10:30
7   p.m., agents observed a dark colored Chevy sedan bearing California license plate
8   8LUJ889 ("Subject Vehicle") pull into the apartment complex for Subject Premises 1 and
9   park in the assigned, covered carport spot #31 in front of Subject Premises 1 where
10   agents have previously observed Miller park. Agents observed Miller, identified based on
11   a comparison to his driver's license photograph, exit the driver's seat of the dark colored
12   Chevy sedan, and a female, who was unable to be identified at that time, exit the
13   passenger seat, and walk into Subject Premises 1 together. Agents obtained Department
14   of Licensing records for the dark colored Chevy sedan that showed it was a Hertz rental
15   car. The previous evening, November 2, 2021, for approximately 45 minutes, agents had
16   observed that the GPS location data for TT placed Miller at the SeaTac Airport near the
17   rental car building.

18   34.   At approximately 10:49 p.m., K9 Devon, with her handler, conducted a
19   sniff of the exterior of the Subject Vehicle that Miller had exited about twenty minutes
20   prior. The narcotics canine first conducted a sniff of vehicles parked next to the Subject
21   Vehicle and did not provide any alerts until reaching the front of the Subject Vehicle.
22   Once reaching the Subject Vehicle, the narcotics canine displayed a distinct behavior

23

24   ――――――――――
     [8] While conducting physical surveillance in support of the narcotics canine sniff, agents detected, based on their
25   training and experience, the odor of marijuana in the exterior areas of Building W where the Subject Premises is
     located; however, the narcotics canine utilized to conduct this sniff is not trained to alert to the odor of marijuana
26   and is only trained to alert to the odors of cocaine, crack cocaine, heroin, and methamphetamine. Regardless,
     because Jimmy Miller Jr. is on federal probation, he is prohibited from possessing or using marijuana. Based on my
27   training and experience and the training and experience of other agents with whom I work, I know that narcotics
     canines can detect the presence of narcotics odor several hours, and in some cases up to 24-36 hours, after the item
     or area was last in or around narcotics.

AFFIDAVIT OF SHAWNA MCCANN - 12
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  change and provided an alert for the presence of narcotics odors in the areas of the front

2  driver's side wheel well and driver's side door. During the sniff, agents observed that

3  Miller had left one of the rear passenger windows of the Subject Vehicle rolled down.

4  Because GPS location data showed that Miller had come from **Subject Premises 3** just

5  before the positive narcotics canine sniff of the Subject Vehicle occupied by Miller,

6  agents believe that evidence of Miller's narcotics trafficking may be present in **Subject**

7  **Premises 3.**

8      35.    On November 9, 2021, the Honorable Paula L. McCandlis issued search

9  warrants for Subject Premises 1, the Subject Vehicle, and Miller's person. As set forth

10  below, agents executed these warrants on November 19, 2021.

11      36.    In the days leading up to the search warrant executions, GPS location data

12  for TT and physical surveillance showed that Miller stayed overnight and for several

13  hours at **Subject Premises 2** and **3**, respectively, as set forth below.

14      37.    On November 10, 2021, at approximately 9:45 a.m., GPS location data for

15  TT used by Miller showed that he was located at Subject Premises 1. At that time, agents

16  drove by Subject Premises 1 and observed a white Mercedes sedan bearing Washington

17  license plate BVS0247, registered to Brittany Eaton at **Subject Premises 2,** parked in

18  assigned, covered carport stall #31 in front of Subject Premises 1.

19      38.    On November 15, 2021, GPS location data for TT showed that Miller left

20  Subject Premises 1 around 11:30 p.m. and arrived at Subject Premises 4 at approximately

21  12:03 a.m. GPS location data for TT showed that Miller remained at Subject Premises 4

22  until around 8:33 a.m. GPS location data for TT showed that Miller then drove to

23  **Subject Premises 2** until around 2:03 p.m. GPS location data for TT showed that Miller

24  then drove to used car dealerships in Puyallup, Washington before returning to **Subject**

25  **Premises 2** at approximately 3:30 p.m. GPS location data for TT showed that Miller then

26  drove to Subject Premises 1, arriving around 4:18 p.m. until around 11:48 p.m. GPS

27  location data for TT showed that Miller drove to Subject Premises 4, arriving on

November 16, 2021 at around 12:18 a.m.

AFFIDAVIT OF SHAWNA MCCANN - 13
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        39.    On November 16, 2021, GPS location data for TT showed that Miller

2  remained at Subject Premises 4 until around 8:48 a.m. and drove to Subject Premises 1,

3  arriving at approximately 9:18 a.m. until around 2:18 p.m. GPS location data for TT

4  showed that Miller then drove to **Subject Premises 2**, arriving at around 2:33 p.m. and

5  staying until around 3:18 p.m. GPS location data for TT showed that Miller then drove to

6  used car dealerships in Tacoma and Fife before returning to **Subject Premises 2** at

7  around 5:33 p.m. GPS location data for TT showed that Miller returned to Subject

8  Premises 1 at around 6:18 p.m. for less than 30 minutes and then drove to a Bank of

9  America in Seattle, Washington. GPS location data for TT then showed that Miller drove

10  to an apartment complex located at 6922 South Myrtle Street, Seattle, Washington and

11  remained until around 11:03 p.m. GPS location data for TT showed that Miller then

12  drove Subject Premises 4, arriving around 11:33 p.m. and staying  until around 8:33 a.m.

13  on November 17, 2021.

14        40.    On November 17, 2021, at around 9:33 a.m., GPS location data for TT

15  showed that Miller drove to car dealerships in Fife where he remained at until around

16  12:18 p.m. GPS location data for TT showed that Miller then drove to Subject Premises 1

17  from around 1:03 p.m. until around 3:18 p.m. On November 17, 2021, at approximately

18  3:11 p.m., agents drove by Subject Premises 1 and observed the white Mercedes sedan

19  bearing Washington license plate BVS0247, registered to Brittany Eaton at **Subject**

20  **Premises 2,** parked in an unassigned, uncovered parking spot across from Subject

21  Premises 1 and a white Chevy Impala with no front license plate and Hinshaw's

22  dealership tags ("Subject Vehicle 2") parked in the assigned, covered carport stall #31 in

23  front of Subject Premises 1.

24        41.    On November 17, 2021, GPS location data for TT showed that Miller left

25  Subject Premises 1 around 3:18 p.m., drove to **Subject Premises 3,** and remained there

26  until around 11:48 p.m. GPS location data for TT showed that Miller then drove to

27  Subject Premises 4, arriving around 12:18 a.m. on November 18, 2021. On November 18,

AFFIDAVIT OF SHAWNA MCCANN - 14
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   2021, at approximately 6:28 a.m., agents drove by Subject Premises 4 and observed

2   Subject Vehicle 2 parked on the street in front of Subject Premises 4.

3       42.     On November 18, 2021, GPS location data for TT showed that Miller left

4   Subject Premises 4 at around 9:03 a.m. GPS location data for TT showed that Miller then

5   drove to **Subject Premises 3**, arriving at around 10:33 a.m. until around 12:03 p.m. GPS

6   location data for TT showed that Miller drove to Subject Premises 1, arriving at around

7   2:33 p.m. until around 3:18 p.m. GPS location data for TT showed that Miller then drove

8   to the Garfield Community Center from around 4:18 p.m. to 5:48 p.m. GPS location data

9   for TT showed that Miller then drove to **Subject Premises 3** from 7:18 p.m. to 11:33

10  p.m. GPS location data for TT showed that Miller then drove to Subject Premises 4,

11  arriving around 12:03 a.m. on November 19, 2021 where he remained overnight. On

12  November 19, 2021, from approximately 7:45 a.m. to 8:30 a.m., agents conducting

13  physical surveillance observed Miller come and go from the vicinity of Subject Premises

14  4 multiple times, talking on a cell phone in the apartment courtyard and unlocking,

15  accessing, and placing a yellow bag into Subject Vehicle 2.  At approximately 8:38 a.m.,

16  agents observed Miller exit from the vicinity of Subject Premises 4, get into the driver's

17  seat of Subject Vehicle 2 and start the car with a key. Miller was the only occupant in the

18  vehicle.

19      43.     At this point, agents executed the search warrant on Miller's person by

20  approaching the vehicle in marked police vehicles and escorting Miller out of the vehicle

21  without incident. When approaching Miller, agents saw he was on an active video call of

22  some type.  In plain view in Subject Vehicle 2, agents observed two cell phones –

23  including the phone that Miller was actively using – in the center cupholders.  One of the

24  investigators terminated the active call.  During the person search, Miller yelled to an

25  unknown female standing on the street in front of Subject Premises 4: "335-8187, tell her

26  to get on it right now." Based on my training and experience, I believe that Miller was

27  advising this unknown female to contact another female to warn her of the police activity

AFFIDAVIT OF SHAWNA MCCANN - 15
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   on him. As set forth below, agents determined that the phone number yelled out by Miller

2   was associated with Brittany Eaton at **Subject Premises 2.**

3      44.   After Miller was removed from Subject Vehicle 2, agents closed the front

4   driver's door to Subject Vehicle 2 and then K9 Cisco, with his handler, conducted a sniff

5   of the exterior of Subject Vehicle 2. K9 Cisco displayed a distinct behavior change and

6   provided an alert for the presence of narcotics odors in the area of the seam of the vehicle

7   near the front driver's door window. K9 Cisco's and his handler's background, training

8   and qualifications are set forth in Attachment D and incorporated by this reference.

9      45.   Agents obtained a search warrant for Subject Vehicle 2 on November 19,

10  2021.[9] In Subject Vehicle 2, agents located a loaded 9mm caliber firearm under the front

11  driver's seat, a spare loaded magazine with 9mm rounds, three cell phones, a small jar of

12  marijuana[10], a bottle of pills with the prescription label partially torn off but with a partial

13  patient name other than Miller's, keys to a Mercedes vehicle and a FOB, multiple rubber

14  gloves, and various COVID vaccination cards – some blank and some with names other

15  than Miller's. Based on my training and experience, I know that it is common for drug

16  traffickers to carry multiple cell phones and to change cell phone numbers and/or devices

17  frequently. Drug traffickers use multiple phones in an attempt to compartmentalize their

18  illicit business and minimize the chances of law enforcement discovering the full scope

19  of their activities.  For example, traffickers may use one phone with some of their

20  customers, and yet another phone with their suppliers.  That way, if law enforcement

21  arrests someone the trafficker communicates with, the rest of their network is harder for

22  law enforcement to detect.  I also know that drug traffickers frequently use cell phones to

23  communicate about and coordinate their drug trafficking activities with their drug

24

25

26  [9] The white Chevy Impala was not a vehicle that agents had previously obtained a search warrant for.

27  [10] While quantities of marijuana for personal use are legal in Washington state, the possession and use of marijuana
    is prohibited by the terms of Jimmy Miller Jr.'s supervised release conditions.

AFFIDAVIT OF SHAWNA MCCANN - 16
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  trafficker associates, including suppliers, customers, and redistributors, such that cell

2  phones of drug traffickers contain evidence of these crimes.

3       46.    Also on November 19, 2021, agents searched Subject Premises 1 and

4  recovered an empty holster for a handgun in the left bedside table in the bedroom.  A

5  loaded magazine for a semiautomatic pistol was located with the holster.  Inside the

6  magazine was approximately fifteen rounds of FN 5.7X28 mm ammunition.  Also located

7  in Subject Premises 1 was a clear plastic baggie of an unknown crystal substance[11], a

8  glass jar of marijuana, and a large amount of small plastic baggies and multiple sets of

9  black rubber gloves, found together in a lower kitchen drawer, that I, and other agents

10  assisting in the search, believed were consistent with drug distribution and packaging

11  materials.

12       47.    As set forth above, agents on physical surveillance had previously observed

13  a silver Mercedes sedan bearing Washington license plate BVS0247 parked at Subject

14  Premises 1 in Miller's assigned carport parking spot. Based on these observations, agents

15  believed the Mercedes key found in Subject Vehicle 2 was for this silver Mercedes sedan

16  bearing Washington license plate BVS0247, which was registered to Brittany Eaton at

17  **Subject Premises 2.** On November 19, 2021, agents drove to **Subject Premises 2** with

18  the Mercedes key and FOB that were found in Subject Vehicle 2 and located the silver

19  Mercedes sedan bearing Washington license plate BVS0247 parked in front of **Subject**

20  **Premises 2.** The FOB on the set of keys from Subject Vehicle 2 opened the apartment

21  complex main gate to **Subject Premises 2**, establishing that Miller had regular access to

22  **Subject Premises 2.** Agents knocked on **Subject Premises 2** and spoke with Brittany

23  Eaton, who provided her phone number as (206) 335-8187, matching the phone number

24  yelled out by Miller at the time of the search of his person. Agents notified Eaton that

25  they wanted to search the silver Mercedes for firearms and narcotics based on evidence

26

27  _____

[11] This unknown crystal substance did not field test positive for methamphetamine but may potentially be a different type of controlled substance.

AFFIDAVIT OF SHAWNA MCCANN - 17
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  and probable cause developed earlier that day related to Miller[12] Eaton volunteered to

2  agents that there was a firearm in the locked glovebox of the Mercedes. Agents used the

3  Mercedes key found in Subject Vehicle 2, which unlocked the silver Mercedes and

4  unlocked the glovebox, where agents located and seized a Glock firearm, showing that

5  Miller had access to the Mercedes vehicle and locked glovebox.[13] Later on November 19,

6  2021 and again on November 29, 2021, Brittany Eaton contacted agents requesting

7  information on when agents would return her firearm and the set of Mercedes keys and

8  FOB found in Subject Vehicle 2. Easton advised agents that she was "good friends" with

9  Miller

10       48.     Miller was arrested on November 19, 2021 for violations of supervised

11  release conditions and had his initial appearance on November 22, 2021. Miller was

12  ordered to be detained at the Federal Detention Center at SeaTac, Washington (FDC-

13  SeaTac) until his evidentiary hearing. On November 30, 2021, agents reviewed

14  transactional records provided by FDC-SeaTac listing the names and addresses of

15  individuals who Miller listed as contacts and individuals who put money on his inmate

16  account. Agents observed that Brittany Eaton put $200 and $250 on Miller's inmate

17  account via Western Union on November 20, 2021, and November 29, 2021,

18  respectively, but listed her address as 3328 South 256th Street, Kent, Washington. The

19  records also showed that Racquaela Grace put $100 on Miller's inmate account on

20  November 29, 2021 via Western Union and listed her address as **Subject Premises 3.**

21       49.     Because agents did not locate any firearms matching the fifteen rounds of

22  FN 5.7X28 mm ammunition found in Subject Premises 1, agents believe that Miller may

23  be storing additional firearms in other locations he frequents, including **Subject Premises**

24

25  [12] Agents proceeded with the search of the silver Mercedes based on probable cause without obtaining a search
warrant based on the automobile exception, exigency, and prior search warrants obtained based on similar probable

26  cause for vehicles associated with Jimmy Miller Jr., including an anticipatory search warrant.

27  [13] For Miller's prior 2013 federal felony conviction for Felon In Possession of a Firearm (case number13-cr-00249-
RAJ), agents had located the firearm at issue in the locked glovebox of a vehicle belonging to a female associate of
Miller.

AFFIDAVIT OF SHAWNA MCCANN - 18
USAO # 2021R01012

1 **2** and **3.** As set forth in Footnote 13, Miller has a history of storing firearms in locations
2 associated with his girlfriends.

3     50.    Because agents located indicia of narcotics trafficking in Subject Premises
4 1 and Subject Vehicle 2, including packaging materials, rubber gloves, and multiple cell
5 phones, but did not locate a narcotics stash or narcotics proceeds, coupled with positive
6 narcotic canines alerts on the Subject Vehicle, Subject Vehicle 2, and Subject Premises 1,
7 agents believe that Miller may be storing narcotics and narcotics proceeds in other
8 locations he frequents, including **Subject Premises 2** and **3.**

9     51.    Accordingly, agents believe that Miller is engaged in drug trafficking
10 activities as well as unlawful possession of firearms activities and is using **Subject**
11 **Premises 2** and **3** to further these criminal activities. Agents further believe that the
12 requested search of **Subject Premises 2** and **3** will lead to the seizure of evidence, fruits
13 and instrumentalities of those offenses.

14     <u>**KNOWLEDGE BASED ON TRAINING AND EXPERIENCE**</u>

15     52.    Based upon my training and experience, and my discussions with other
16 experienced officers and agents involved in drug investigations, I know the following:

17         a.    Traffickers of controlled substances, and those who assist them,
18 maintain and tend to retain accounts or records of their drug trafficking activities,
19 including lists of drug quantities and money owed (pay-owe sheets), telephone records
20 including contact names and numbers, photographs, and similar records of evidentiary
21 value. These items are generally kept in locations where drug traffickers believe their
22 property is secure and will remain undetected from law enforcement, such as inside their
23 homes, vehicles, storage lockers, and businesses.

24         b.    Traffickers of controlled substances commonly maintain records
25 reflecting names or nicknames, addresses, and/or telephone numbers of their suppliers,
26 customers, and associates in the trafficking organization. Traffickers commonly maintain
27 this information in books or papers as well as in their cellular telephones. Traffickers
often maintain cellular telephones for ready access to their clientele and to maintain their

AFFIDAVIT OF SHAWNA MCCANN - 19
USAO # 2021R01012

1  ongoing drug trafficking. Traffickers often change their cellular telephone numbers to
2  avoid detection by law enforcement, and it is common for traffickers to use more than
3  one cellular telephone at any one time.

4          c.      Traffickers maintain evidence of their criminal activity at locations
5  that are convenient to them, including their residences, vehicles, and storage lockers. This
6  evidence often includes not only contraband and paraphernalia, but also financial records,
7  records of property and vehicle ownership, records of property rented, and other
8  documentary evidence relating to their crimes. Drug traffickers sometimes take or cause
9  to be taken photographs and/or video recordings of themselves, their associates, their
10  property, and their illegal product. These individuals often maintain these photographs
11  and recordings in their possession or at their premises.

12          d.      During the execution of search warrants, it is common to find
13  papers, letters, billings, documents, and other writings which show ownership, dominion,
14  and control of vehicles, residences, and/or storage units.

15          e.      Persons trafficking and using controlled substances commonly sell
16  or use more than one type of controlled substance at any one time.

17          f.      Traffickers frequently maintain items necessary for weighing,
18  packaging, and cutting drugs for distribution. This paraphernalia often includes, but is not
19  limited to, scales, plastic bags and cutting/diluting agents and items to mask the odor of
20  drugs.

21          g.      It is common for drug dealers to also be users of their product, and
22  that it is common for the drug user to maintain paraphernalia associated with the use of
23  controlled substances.

24          h.      Traffickers frequently maintain records, books, notes, ledgers, travel
25  documents, and other papers relating to the transportation and distribution of controlled
26  substances, including travel records, in locations convenient to them, such as their
27  residences and vehicles.

AFFIDAVIT OF SHAWNA MCCANN - 20
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          i.      Traffickers frequently keep on hand amounts of United States

2 currency in order to maintain and finance their ongoing narcotics business. They

3 commonly deal in currency because of its untraceable nature. They sometimes convert

4 their illicit currency into currency equivalents such as cashier's checks and money orders.

5 Traffickers often conceal in secure locations such as their residences and vehicles

6 currency, financial instruments, precious metals, jewelry, and other items of value which

7 are the proceeds of drug transactions, and evidence of consequential financial

8 transactions relating to obtaining, transferring, secreting, or spending large sums of

9 money made from engaging in drug trafficking activities, and financial books, records,

10 receipts, notes, ledgers, diaries, journals, and all records relating to income, profit,

11 expenditures, or losses, and other records showing the management of such assets.

12 Traffickers often have money counters.

13          j.      Traffickers often maintain weapons, including guns, ammunition,

14 and body armor, in secure locations such as their residences and vehicles, in order to

15 protect their drugs and drug proceeds.

16          k.      Traffickers very often place assets in names other than their own,

17 use fictitious names and identification, or use rental vehicles and properties, to avoid law

18 enforcement detection. Even though these assets are in other persons' or business' names,

19 the drug traffickers actually own and/or use these assets and exercise dominion and

20 control over them.

21          l.      Individuals who regularly handle controlled substances often leave

22 the scent of controlled substances on other items they handle, including currency from

23 narcotics sales/proceeds, firearms, door handles, and clothing thereby transferring the

24 odor of the controlled substances to those items. Controlled substance detection canines

25 (also called narcotics canines) are trained to alert to the odor of narcotics substances in or

26 around these items. Because of this, drug traffickers commonly use gloves when handling

27 narcotics in order to reduce the odor on their person and evade law enforcement

detection.

AFFIDAVIT OF SHAWNA MCCANN - 21
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          m.    Illegal drug trafficking is a continuing activity over months and even

2  years. Illegal drug traffickers will repeatedly obtain and distribute controlled substances

3  on a somewhat regular basis, much as any distributor of a legitimate commodity would

4  purchase stock for sale and, similarly, such drug traffickers will have an "inventory"

5  which will fluctuate in size depending upon various factors to include the demand and

6  supply for the product. I would expect the trafficker to keep records of his illegal

7  activities for a period of time extending beyond the time during which he actually

8  possesses illegal controlled substances, in order that he can maintain contact with his

9  criminal associates for future drug transactions, and so that he can have records of prior

10  transactions for which, for example, he might still be owed money, or might owe

11  someone else money. These records are often created in code.

12          n.    As noted above, drug dealers use cellular telephones as a tool or

13  instrumentality in committing their criminal activity. They use them to maintain contact

14  with their suppliers, distributors, and customers. They prefer cellular telephones because,

15  first, they can be purchased without the location and personal information that land lines

16  require. Second, they can be easily carried to permit the user maximum flexibility in

17  meeting associates, avoiding police surveillance, and traveling to obtain or distribute

18  drugs. Third, they can be passed between members of a drug conspiracy to allow

19  substitution when one member leaves the area temporarily. Since cellular phone use

20  became widespread, every drug dealer I have contacted has used one or more cellular

21  telephones for his or her drug business.

22  **CONCLUSION**

23      53.    Based on the above-described information, there is probable cause to

24  believe that contained within **Subject Premises 2** and **3** there exists evidence (including

25  at least two cell phones), fruits, and instrumentalities of violations of 21 U.S.C. §§ 841

26  and 846 (distribution of, and possession with intent to distribute, controlled substances,

27  and conspiracy to do the same), and 18 U.S.C. § 922(g)(1) (felon in possession of a

firearm), committed by Miller  I therefore respectfully request that this Court issue this

AFFIDAVIT OF SHAWNA MCCANN - 22
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    search warrant authorizing the search of **Subject Premises 2** and **3** as further described in

2    Attachments A1 and A2 for the search and seizure of the items more specifically

3    described in Attachment B.

4

5

6                     _____
                     Shawna McCann, Affiant

                     Special Agent, FBI

7

8        The above-named agent provided a sworn statement to the truth of the foregoing

9    affidavit by telephone on the 9th day of December, 2021.

10

11

12

13                 The Honorable Paula L. McCandlis

                United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

AFFIDAVIT OF SHAWNA MCCANN - 23
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**ATTACHMENT A1**

2      1040 S 320th Street, Apartment 11, Federal Way, Washington, the residence of

3   Brittany Eaton and associated with Jimmy Miller Jr. ("**Subject Premises 2"**), within the

4   Trinidad South Townhomes with a green and tan exterior and a marker with the number

5   "11" listed next to the unit door, as depicted below. With respect to the location to be

6   searched, the search is to include all containers, locked or unlocked, where the items in

7   Attachment B could be found.

8

9

10

11

12

13

14



15

16

17

18

19

20

21

22



23

24

25

26

27

AFFIDAVIT OF SHAWNA MCCANN - 24
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A2**

11300 1st Avenue NE, Apartment 220, Seattle, Washington, the residence of Racquael Grace and associated with Jimmy Miller Jr. ("**Subject Premises 3**"), within the Northgate West Condominium currently under construction on the exterior and a marker with the number "220" listed next to the unit door, as depicted below. With respect to the location to be searched, the search is to include all containers, locked or unlocked, where the items in Attachment B could be found.

 



AFFIDAVIT OF SHAWNA MCCANN - 25
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

**Items to Be Seized**

From the location listed in Attachments A1 and A2 of these warrants, the government is authorized to search for and seize the following items, which are evidence, instrumentalities, and/or fruits of the commission of the following crimes: distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to commit these offenses in violation of Title 21, United States Code, Section 846; and unlawful possession of a firearms, in violation of Title 18, United States Code, Section 922(g)(1), including the following:

1. Any controlled substances and suspected controlled substances, including but not limited to cocaine, crack cocaine, and marijuana.

2. Drug paraphernalia, meaning items used or intended to be used to store, process, package, use, and/or distribute controlled substances, such as plastic bags, cutting agents, scales, measuring equipment, chemicals or similar items used to test the purity and/or quality of controlled substances, and similar items.

3. Drug transaction records, meaning documents such as ledgers, receipts, notes, and similar items relating to the acquisition, transportation, and distribution of controlled substances.

4. Customer and supplier information, including items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, maps or directions, and similar items.

5. Financial records, including bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, vehicle documents/titles, financial instruments, money transfers, wire transmittals, negotiable instruments, bank drafts, cashier's checks, business records, documents related to the purchase, sale, and

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

improvement of real estate, and any other records that show income and expenditures, net worth, or relate to obtaining, transferring, secreting, laundering, or spending large sums of money acquired from engaging in the acquisition and distribution of controlled substances.

6. Cash, precious metals, jewelry, and other similar items of value, and/or proceeds of drug transactions, as well as money counters.

7. Documents and other property, such as photographs, mail, or other items, tending to show who resides in and has dominion and control over the location.

8. Firearms or parts thereof, ammunition, firearms magazines, firearms accessories, body armor, firearms boxes, firearms manuals, records of the purchase of firearms, or other items related to the ownership or use of firearms.

AFFIDAVIT OF SHAWNA MCCANN - 27
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



**Attachment "C"**

Seattle Police Narcotics ProAct Unit

Detective Pete Lazarou & Canine Cisco



## Experience

I, Detective Pete Lazarou #6893, am a fully commissioned Police Officer employed by the Seattle Police Department and currently assigned to the Seattle Police Department's Narcotics ProAct Unit. My assignment is in an undercover role where I am dressed in civilian clothes and drive an unmarked detective vehicle which is not identifiable as law enforcement.

I have been a Police Officer since July 2001. I attended the Washington State Law Enforcement Training Academy, which consisted of 720 hours of basic law enforcement training. Of the 720 hours of instruction, approximately 16 hours was dedicated to narcotics investigation. This training included viewing and smelling several different narcotics.

My duties involve conducting both short-term and long-term narcotic operations which include writing and serving search warrants. I also am tasked with working with confidential informants (CIs), conducting undercover operations, and conducting surveillance on narcotic traffickers. In my training, I have learned how to recognize indicators involved with narcotics related activities. During my career, I have been involved in hundreds of narcotics investigations and arrests as either the primary or assisting officer/detective. Because of this experience and training, I am familiar with common methods of investigating drug trafficking and manufacturing organizations and have become familiar with the methods of operation of drug traffickers and manufacturers, including, but not limited to: their methods of importing, exporting, storing, concealing, and packaging drugs; their methods of transferring and distributing drugs; their use of cellular telephones; and their use of code words, counter surveillance, and other methods of avoiding detection of law enforcement. I am also familiar with the various methods of packaging, delivering, transferring, and laundering drug proceeds. Additionally, through training and experience, I can identify illegal drugs by sight and texture. I am trained to use a field test kit to identify the presumptive presence of controlled substances.

In May 2004 I successfully completed a 240-hour narcotics detection canine training course with my previous narcotics canine from the Washington State Department of Corrections on McNeil Island.

## Canine "Cisco"

K9 Cisco is an adult yellow Labrador and has been assigned to the Narcotics ProAct Unit since October 6, 2021. K9 Cisco is trained in the detection of illegal narcotics and is trained to search for, and alert to, the

presence of the odors of cocaine, crack cocaine, heroin, methamphetamine, and their respective derivatives. K9 Cisco is **not** trained to detect the odor of marijuana.

In October 2021, I successfully completed a 100-hour narcotics detection canine training with K9 Cisco under the direction of Marysville Police Department K9 Officer Brad Smith.  K9 Ofc. Smith assisted me with training K9 Cisco and imprinting him with the aforementioned odors. K9 Ofc. Smith is currently an evaluator for narcotic detection canine teams through the Washington State Criminal Justice Training Commission and the Pacific Northwest Police Drug Detection Dog Association.  He is certified as a Master Handler Team in both Narcotic Detection and Generalist (Patrol) Canine through the Washington State Police Canine Association and is certified as a Trainer of Narcotic Detection and Generalist (Patrol) Canine Teams through the Washington State Police Canine Association.

On October 6th, 2021, K9 Cisco and I were certified as a narcotics detection canine team through the Washington State Criminal Justice Training Commission (CJTC), meeting the standards set forth by Washington Administrative Code (WAC) 139-05-915 and CJTC policy.  In addition, on [date], K9 Cisco and I were certified by the Washington State Police Canine Association. Certification standards require that all trained odors are tested in each of the following areas: outside areas, building searches, vehicle searches, and package searches.

When deployed, K9 Cisco is worked in a specific area and/or "search pattern" and I am trained to watch for his "changes of behaviors."  K9 Cisco's "changes of behaviors" range from a distinct breathing change to intense sniffing with his mouth closed, sometimes accompanied by a distinct body turn or head snap towards the odor as well as a noticeable change in tail movement.  Upon detecting one of the aforementioned odors, K9 Cisco will give this "change of behavior." K9 Cisco will then work to the "source" of the odor and give his "alert" to that location. K9 Cisco is trained to give a "passive alert" in which K9 Cisco presses his nose in the area where the odor is emanating while maintaining a rigid body position.  K9 Cisco has consistently demonstrated the capability to detect the odors emanating from the aforementioned controlled substances.

K9 Cisco and I train together on a consistent and ongoing basis with other handlers and certified trainers. The training consists of varied search scenarios, set times, and quantities/types of narcotics, as well as distractions. K9 Cisco has proven to be reliable and consistent in all phases of this training.

### K9 Certifications

- WAC Narcotics 2021-current
- WSPCA certification 2021- current

*I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct (RCW 9A.72.085) and I am entering my authorized user ID and password to authenticate it.*

**Detective Pete Lazarou**

**Seattle Police Narcotics ProAct Unit**

**Attachment "C"**

**Seattle Police Narcotics ProAct Unit**

**Canine Narcotics Team**

**Detective P. Lazarou and K9 Cisco**

**Seattle Police Case Number: Seattle Police Case Number**

**Outside Agency Case Number:  FBI 281D-SE-93445**

**Date:  11-19-2021**

**Type of Application:  Vehicle**

**Location:  1700blk E Olive St, Seattle WA**

**<u>Assignment:</u>**
I, Detective P. Lazarou #6893, am a fully commission Police Officer employed by the Seattle Police Department. My current assignment is a detective/canine handler with the Seattle Police Narcotics ProAct Unit.

**<u>Incident:</u>**

On 11-19-2021, I was requested to assist FBI and SPD TFO's at the 1700blk of East Olive St in Seattle WA. Once at the location FBI Agent McCann requested to have my K9 partner sniff the exterior of a 2014 Chevy Impala which was bearing a temp tag in the rear window as A4566680. I retrieved K9 Cisco from my undercover vehicle and presented the exterior of the listed vehicle.  I started at the front driver's side fender and began working around the vehicle.  As I reached the driver's door with K9 Cisco I recognized his change of behavior. K9 Cisco alerted the driver's door seam between the driver's window and rear window.  I rewarded K9 Cisco and advised FBI Agent McCann that K9 Cisco positively alerted to the exterior of the listed vehicle.





*I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct (RCW 9A.72.085) and I am entering my authorized user ID and password to authenticate it.*

**Detective P. Lazarou #6893** _____



**Attachment "D"**

Seattle Police Narcotics ProAct Unit

Detective William Shaub & Canine Devon



### Experience

I am a commissioned law enforcement officer of the Seattle Police Department (SPD), currently assigned to the Narcotics Unit. When I began with SPD in 2008, I served in uniformed patrol at the South Precinct. I was responsible for conducting preliminary investigations of all crimes under Washington law. I patrolled high crime areas and participated in proactive policing in those areas. I also handled citizen complaints and concerns within their communities. I later served on the South Precinct Anti-Crime Team, where I worked in both uniformed and plain clothes capacities.

From November 2017-July 2021, I was a member of the SPD Canine Unit. I was partnered with PD Boggs, a German Shepherd purchased by the Seattle Police Department. Boggs and I received over 600 hours of training before we certified as a Generalist Dog Team for the City of Seattle. Our training consisted of philosophies/theories of police canine, legal and liability, including applicable department policies, public relations, care and maintenance, obedience and control, tracking, trailing, area searches, building searches, evidence searches, pursuit and holding, and master protection. Boggs and I certified as a Generalist Dog Team on August 21, 2018, and as a team met the WAC and WSPCA standards. Boggs had proven reliable in following human track, but unfortunately was forced to retire early due to medical issues.

I am currently assigned to the SPD Narcotics Unit. Beginning in August 2021, I attended the Narcotic Detector Dog Handling course at Pacific Coast Canine, in Custer, WA. Pacific Coast Canine owner Kenneth A. Pavlick, who has more than 25 years of experience handling and training military and law enforcement dogs, provided the instruction. I surveyed multiple dogs before selecting K9 Devon, but ultimately selected her because of her unusually high play, prey, retrieve and hunt drives. Additionally, she was selected based upon her size, personality, socialization and confidence in all environments such as confined spaces, elevated surfaces, and slick floors.

Mr. Pavlick and his staff at Pacific Coast Canine imprinted K9 Devon to detect the odors emanating from cocaine, crack cocaine, heroin, and methamphetamine. The imprinting was conducted in a controlled environment to reliably imprint the drug odor. Devon and I received

over 200 hours of training before we certified as a Narcotics Team for the City of Seattle. Our training consisted of philosophies/theories of police canine, legal and liability, including applicable department policies, public relations, care and maintenance, obedience, interior searches, vehicle searches, exterior open-air searches, and parcels and or luggage. During training, aid hide levels became progressively more difficult as did the length of searches required. Controlled negatives, proofing, and distracting odors were added to the training environments to ensure K9 Devon had not extrapolated the drug odor scent picture(s) to include any collateral odors. All types of training locations were used in order to expose K9 Devon to the environments in which she would be required to perform in real life deployments. K9 Devon was also exposed to a variety of illicit drug odor quantities—from reduced odor training aids (scented articles) to the odors emanating from multiple ounces to kilo quantities.

On October 6, 2021, K9 Devon and I were certified as narcotics detection canine team through the Washington State Criminal Justice Training Commission (CJTC), meeting the standards set forth by Washington Administrative Code (WAC) 139-05-915 and CJTC policy. K9 Devon and I also certified to the Washington State Police Canine Association (WSPCA) standard. Certification standards require that all trained odors are tested in each of the following areas: open air/outside searches, building searches, vehicles searches, and package/luggage searches.

When deployed, K9 Devon is worked in a specific area and/or search pattern, and I am trained to watch for changes in behavior, which I commonly refer to as "alerts." K9 Devon's "alerts" range from changes in respiratory rate, closing her mouth while processing the odor, distinct head turns/snaps, casting head high into the air, tail wagging increases, beginning to bracket objects, or beginning to jump high onto objects or shelves. These alerts observed during training reliably predict the presence of any of the aforementioned narcotics odors she is trained to locate. K9 Devon will then work to the strongest concentration of the odor and give her final indication, which is a sit.

K9 Devon and I train together on a consistent and ongoing basis with other handlers and certified trainers. The training consists of varied search scenarios, set times, and quantities/types of illicit narcotics. K9 Devon has proven reliable and consistent in all phases of this training.

During my 13 years as a police officer, I have participated in numerous investigations of organizations trafficking in controlled substances and, as a result, I have an understanding of the manner in which drugs are distributed and the various roles played by individuals and groups in the distribution. I have participated in the execution of numerous narcotics search warrants. I have received on the job training in the enforcement of state narcotics laws, and have been involved in multiple aspects of narcotics investigations, including: (a) the debriefing of witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances; (b) surveillance; and (c) analysis of documentary and physical evidence. Finally, I have testified in judicial proceedings and prosecutions for violations of state narcotics laws and have participated in the execution of numerous drug search warrants.

*I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct (RCW 9A.72.085) and I am entering my authorized user ID and password to authenticate it.*

**Detective Will Shaub**
**Seattle Police Narcotics ProAct Unit**

Attachment "B"

Seattle Police Narcotics ProAct Unit

Canine Narcotics Team

Detective W. Shaub and K9 Devon

Seattle Police Case Number: N/A

Outside Agency Case Number:  United States District Court Warrant Number MJ21-579

Date:  11/03/2021

Type of Application:  Exterior door search, and exterior vehicle search.

Location:  23811 132nd AVE SE, APT W8 Kent, WA

### Assignment:

I, Detective W. Shaub #7444, am a fully commissioned Police Officer employed by the Seattle Police Department. My current assignment is a detective/canine handler with the Seattle Police Narcotics ProAct Unit.

### Incident:

On November 3, 2021 FBI Agent Shawna McCann requested the assistance of K9 Devon and I to do a exterior sniff on a exterior apartment door, and exterior vehicle sniff at 23811 132nd AVE SE Kent, WA. Investigators obtained probable cause to conduct a sniff/search of the staircase/breezeway and exterior of the apartment unit door/porch area of 23811 132nd AVE SE Unit #W8. The warrant was signed on October 29, 2021 and expires on November 12, 2021.  Agent McCann conducted a brief of the operation, and then escorted us to the location.

I placed Devon on lead and walked her to the base of the stairs.  The apartment in question was located on the second floor of building 'W.'  At the base of the stairs I gave Devon the command to search and she began actively searching as she pulled me up the stairs.  Devon pulled me to the left at the stop of the stairs, away from the target apartment.  She continued to work the open breezeway, before turning around and began actively working near apartment #W8.  Devon then began displaying distinct changes in behavior, as her respiratory rate changed and her tail began flagging quickly.  Devon then began working the lower door seam and door knob, actively sniffing with her mouth closed.  These are clear alerts to me that Devon is actively working the odors she is trained to indicate on.  Devon then began working with her head up, towards the adjacent stairwell, before returning to the door and gave her final trained indication.  I advised Agent McCann Devon had indicated to the presence of odor near apartment #W8.

Later in the evening, Agent McCann requested we return to the apartment building and conduct a exterior sniff of a vehicle.  The vehicle was parked in the parking lot, outside of building 'W.'  The vehicle was parked between two other vehicles, backed in to the parking stall.  Det. Knapp of SPD escorted

Devon and I to the location. I commanded Devon to search, and she actively began working other vehicles as we walked towards the target vehicle, actively searching and sniffing. At the front of the target car, Devon displayed a distinct behavior change and began actively sniffing with her mouth closed. As we worked the front end of the target vehicle she snapped her head down the driver side of the vehicle. I worked her in our fixed search pattern, which is counterclockwise around vehicles. Devon actively alerted to the front driver side wheel well and driver side door, before performing final indication. I advised Agent McCann of the alert and indication on the vehicle. The vehicle Devon indicated on was a newer Chevrolet sedan with California license 8LUJ889.

*I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct (RCW 9A.72.085) and I am entering my authorized user ID and password to authenticate it.*

**Detective W. Shaub #7444**  _____ # 7444